**Ted BERKIC, Plaintiff-Appellant,**

**v.**

**Michael CRICHTON, Robin Cook, Marvin Moss, Metro-Goldwyn-Mayer/United Artists Entertainment Company, Defendants-Appellees.**

No. 84–5733.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 10, 1985.

Decided March 11, 1985.

David Byers, Beverly Hills, Cal., for plaintiff-appellant.

Marsha E. Diedrich, Silverberg, Rosen, Leon & Behr, Edward A. Ruttenberg, Youngman, Hungate & Leopold, Los Angeles, Cal., for defendants-appellees.

Before SNEED, POOLE, and FERGUSON, Circuit Judges.

SNEED, Circuit Judge.

The plaintiff appeals the district court's judgment disposing by various means of

his copyright and Lanham Act claims. We affirm.

## I.

### FACTS AND PROCEEDINGS BELOW

In 1968, the plaintiff wrote a 54 page screen treatment that he called *Reincarnation, Inc.* Hoping to interest a studio in producing a film based on his work, he gave the screen treatment to a literary agent, defendant Marvin Moss, and asked for his help. Moss read *Reincarnation* and suggested that the plaintiff collaborate with defendant Michael Crichton on a "shared-credit" basis. The plaintiff declined the offer.

In 1978, defendant MGM/UA Entertainment Co. released the movie *Coma*, written and directed by Crichton, and based on a novel by the same title written by defendant Robin Cook. The novel is still in print and the movie has been and continues to be shown on cable television and is available on videocassettes and videodiscs. The plaintiff alleges that both the movie and the book *Coma* were largely "adapted, derived, or copied" from his screen treatment *Reincarnation.*

In December 1980, the plaintiff brought suit in California state court alleging plagiarism, breach of implied-in-fact contract, and several other state causes of action. That complaint was dismissed on a demurrer and the dismissal was affirmed on appeal.

In March 1983, the plaintiff filed this lawsuit in federal district court alleging that *Coma* infringed his copyright in *Reincarnation*, and that by failing to credit his

contribution to the novel or the movie, the defendants marketed their works under a false designation of origin and thus violated the Lanham Act's prohibition of unfair competition.

On July 1, 1983, the district court dismissed the copyright claim as time-barred to the extent that it was based on actions occurring more than three years before the claim was filed in federal court. The district court then dismissed the Lanham Act claim in its entirety. Although the court's order did not state the reason for the dismissal, the district judge explained at the hearing on the defendants' motion to dismiss that the plaintiff had failed to state a claim on which relief could be granted because he could not establish the requisite element of "secondary meaning."

On December 16, 1983, the district court disposed of the remainder of the plaintiff's copyright claim by granting summary judgment for the defendants on the ground that no reasonable jury could conclude that *Coma* and *Reincarnation* were substantially similar.

We shall address the substantial similarity issue. Because we affirm the district court's disposition of this issue, we need not reach the other issues raised by the plaintiff on this appeal.[1]

## II.

### SUBSTANTIAL SIMILARITY

To establish a successful copyright claim, a plaintiff must show: (1) his ownership of the copyright; (2) the defendant's access to his work; and (3) "substantial similarity" between the defendant's work and his own.

---

1. On this appeal the plaintiff argues that the district court's partial dismissal of his copyright claim on statute of limitations grounds was erroneous. Even if the plaintiff's arguments concerning the statute of limitations are correct, it would be useless to remand the copyright action. Our affirmance of the grant of summary judgment on the substantial similarity issue precludes recovery on any part of the copyright claim. Similarly, we believe that our holding that as a matter of law there is no substantial similarity between *Reincarnation* and *Coma* disposes of the plaintiff's Lanham Act claim.

"[W]ithout substantial similarity there can be no claim for reverse passing off under section 43(a) [of the Lanham Act]." *Litchfield v. Spielberg*, 736 F.2d 1352, 1358 (9th Cir.1984). Finally, the plaintiff's argument that his "derivative work" copyright claim presents issues separable from his main copyright claim is frivolous. If the plaintiff cannot show a substantial similarity between the defendants' work and his own, he cannot prevail on a claim for alleged violations of his right to prepare derivative works. *See id.* at 1357.

*See Sid & Marty Krofft Television Productions, Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1162 (9th Cir.1977). For purposes of their summary judgment motion only, the defendants stipulated the plaintiff's ownership of the copyright and their access to his work, but argued that, as a matter of law, there was no substantial similarity between *Reincarnation* and *Coma.* On appeal, the district court's judgment granting that motion, and the findings that support it, are subject to our *de novo* review. *Twentieth Century-Fox Film Corp. v. MCA, Inc.*, 715 F.2d 1327, 1328 (9th Cir.1983).

### A. *The Test For Substantial Similarity.*

■ We have broken the test for substantial similarity into two parts. The first part, the "extrinsic test," is used to determine whether two works are substantially similar in their "general ideas." The extrinsic test is objective; it

> depends not on the responses of the trier of fact, but on specific criteria which can be listed and analyzed. Such criteria include the type of artwork involved, the materials used, the subject matter, and the setting for the subject. Since it is an extrinsic test, analytic dissection and expert testimony are appropriate.

*Krofft*, 562 F.2d at 1164. The extrinsic test compares the individual features of the works; it looks to find specific, articulable similarities between the plot, themes, dialogue, mood, setting, pace, characters, and sequence of events. *Litchfield v. Spielberg*, 736 F.2d 1352, 1356–57 (9th Cir.1984).

■ The second part of the substantial similarity inquiry, the "intrinsic test," is used to determine whether two works are substantially similar in their "forms of expression." The intrinsic test is subjective; it depends solely "on the response of the ordinary reasonable person." *Krofft*, 562 F.2d at 1164. To that extent, expert testimony or the comparison of individual features of the works is inappropriate in applying the intrinsic test. Rather, the trier of fact ordinarily decides whether the "total concept and feel" of the two works is

substantially similar. In comparing two films, for example, or a film with a written work, the proper question in applying the intrinsic test is whether the ordinary, reasonable audience would recognize the defendant's work as a "dramatization" or "picturization" of the plaintiff's work. *Litchfield*, 736 F.2d at 1357.

■ To prevail on a copyright claim, a plaintiff must show substantial similarity of *both* ideas and expression. *Id.* at 1356. In this case, the district court found as a matter of law that *Coma* and *Reincarnation* were substantially *dissimilar*, both in idea and in expression. We agree.

### B. *Disposition By Summary Judgment.*

■ It is true that as a general rule, summary judgment is not highly favored on the substantial similarity issue in copyright cases. *See Litchfield*, 736 F.2d at 1355 ("Substantial similarity is usually an extremely close issue of fact and summary judgment has been disfavored in cases involving intellectual property."); *Jason v. Fonda*, 526 F.Supp. 774, 777 (C.D.Cal. 1981), *incorporated by reference*, 698 F.2d 966 (9th Cir.1982) ("Substantial similarity in copyright infringement actions is a question of fact uniquely suited for determination by the trier of fact."). But the plaintiff is wrong to suggest that summary judgment can never be properly granted on the substantial similarity issue. Indeed, "no special standard is employed in determining whether summary judgment is appropriate on the issue of substantial similarity of expression in a copyright case." *See v. Durang*, 711 F.2d 141, 142 (9th Cir.1983). *Krofft* emphasized that the question whether there is substantial similarity of ideas between two works "may often be decided as a matter of law." 562 F.2d at 1164. And, since *Krofft*, we have frequently affirmed summary judgments in favor of copyright defendants on the substantial similarity issue. *See Litchfield*, 736 F.2d at 1358 (upholding summary judgment on ground that no reasonable jury could find substantial similarity); *See v. Durang*, 711 F.2d at 142 (same); *Jason*,

526 F.Supp. at 777, *incorporated by reference*, 698 F.2d at 966 (same). Our independent review of *Reincarnation* and *Coma* leads us to the same result today.

### C. The Extrinsic Test for Similarity of Ideas.

■ At a very high level of generality, the works do show a certain gruesome similarity. Both deal with criminal organizations that murder healthy young people, then remove and sell their vital organs to wealthy people in need of organ transplants. To some extent, both works take their general story from the adventures of a young professional who courageously investigates, and finally exposes, the criminal organization. But this degree of similarity between the basic plots of two works cannot sustain a plaintiff's claim that the works are "substantially similar." No one can own the basic idea for a story. General plot ideas are not protected by copyright law; they remain forever the common property of artistic mankind. *See Litchfield*, 736 F.2d at 1357 (no copyright protection for general plot ideas); 3 *M. Nimmer on Copyright* § 13.03[A] (1984).

■ The test for "substantial similarity of ideas" compares, not the basic plot ideas for stories, but the actual concrete elements that make up the total sequence of events and the relationships between the major characters. The extrinsic test for similarity of ideas looks beyond the vague, abstracted idea of a general plot and instead "focuses on ... the objective details of the works.... The extrinsic test requires a comparison of plot, theme, dialogue, mood, setting, pace, and sequence." *Litchfield*, 736 F.2d at 1356. *See also Jason*, 526 F.Supp. at 777. In this case, we believe that the district court was correct in its judgment that no jury could reasonably conclude that plaintiff's *Reincarnation* and defendants' *Coma* were substantially similar in ideas.

■ In *Reincarnation*, for example, the main character does not, until very late in the story, participate in the investigation that exposes the criminal organization. Indeed, for most of *Reincarnation*, the plaintiff's Dr. Lamkin is a dupe of the criminal conspiracy. In *Coma*, Dr. Wheeler, who investigates the unexplained brain deaths of young, healthy patients, is moved to action by purely personal concerns: early in the story her best friend falls victim to the organization during a routine surgical procedure. In *Reincarnation*, on the other hand, Lieutenant DeNove, who investigates the mysterious disappearance of young women, is seeking to advance his career as a police detective.

The settings of both works are also dissimilar. Most of the events in *Coma* take place in a large metropolitan hospital. Only a few, relatively minor scenes in *Reincarnation* are set in a hospital. *Coma* is replete with references to sophisticated medical technology. *Reincarnation* is a less technically intimidating, if more traditionally satisfying detective story.

The major romantic relationship in *Reincarnation*, between Lieutenant DeNove and his wife, is a significant part of the story, and is used by the plaintiff to discuss the racial problems of the 1960s. The only romantic relationship in *Coma*, between Dr. Wheeler and her boyfriend, is not a major part of the story and is not used to treat larger social concerns.

Nevertheless, we recognize that there are some similarities between the works. The plaintiff argues that they raise at least a triable issue of fact on the substantial similarity of ideas issue. We believe that the plaintiff's argument rests on a misunderstanding of the nature of the protection afforded by copyright law. It is well established that, as a matter of law, certain forms of literary expression are not protected against copying. As noted earlier, the general idea for a story is among these. So too are all situations and incidents which flow naturally from a basic plot premise, so-called scenes a faire. *See Jason*, 526 F.Supp. at 777. Many of the similarities the plaintiff finds between *Coma* and his own work fall into this category of

unprotectible expression. Many of the other similarities he lists—including depictions of the small miseries of domestic life, romantic frolics at the beach, and conflicts between ambitious young people on one hand, and conservative or evil bureaucracies on the other—are also unprotectible. These familiar scenes and themes are among the very staples of modern American literature and film. The common use of such stock cannot raise a triable issue of fact on the plaintiff's copyright claim. It merely reminds us that in Hollywood, as in the life of men generally, there is only rarely anything new under the sun. Taken separately or together, the common features of *Coma* and *Reincarnation* do not allow a reasonable inference that the works are substantially similar in their ideas.

D. *The Intrinsic Test for Similarity of Expression.*

 Nor did the district court err in the application of the intrinsic test. We agree that *Coma* and *Reincarnation* are not substantially similar in their form of expression. Our own, independent review of the works satisfies us that they are substantially dissimilar in "the mood evoked ... as a whole," *see See v. Durang,* 711 F.2d at 144, and in the "total concept and feel of the works," *see Litchfield,* 736 F.2d at 1357. We are confident that no reasonable reader or moviegoer would recognize either the book or movie *Coma* as a "picturization" or "dramatization" of *Reincarnation. See id.* at 1357.

AFFIRMED.