Livia **MILANO**, Plaintiff,

v.

**NBC UNIVERSAL, INC.,
et al., Defendants.**

No. CV 06–3237–GAF.

United States District Court,
C.D. California.

Sept. 5, 2008.

---

Alvin L. Pittman, Alvin L. Pittman Law Offices, Richard A. Kolber, Tisdale & Nicholson, Los Angeles, CA, for Plaintiff.

Evan Douglas Dwin, Joel R. Weiner, Zia F. Modabber, Katten Muchin Rosenman, Los Angeles, CA, Bruce Isaacs, David H. Boren, Robert A. Wyman, Wyman and Isaacs LLP, Beverly Hills, CA, for Defendants.

## MEMORANDUM AND ORDER RE: MOTION FOR SUMMARY JUDGMENT

GARY ALLEN FEESS, District Judge.

## I.

## INTRODUCTION

In 2003 and early 2004, Plaintiff Livia Milano, while working for Twentieth Television, Inc., developed a treatment for "From Fat to Phat," which described a concept for a reality television series involving contestants who try to lose weight. Milano disclosed her idea to a number of people with whom she worked, and ultimately pitched her idea to Twentieth, which declined to pursue the project. Shortly thereafter, Defendant NBC Universal, a competitor of Twentieth's, announced that its fall lineup included a reality television show, "The Biggest Loser," in which contestants try to lose weight with the winner being the biggest loser. This case centers on Milano's claim that the show, which aired and became a success, was based on her "From Fat to Phat" treatment.

In 2006, Milano filed this lawsuit naming Twentieth, NBC Universal, and several individuals and their companies who are alleged to have infringed on her copyrighted treatments for the television show and to have misappropriated her ideas giving rise to tort claims under state law. Two groups of Defendants have now moved for summary judgment. Defendants Twentieth, Shine Limited, Daniel Tibbets, and Andrew Hill ("Twentieth Defendants") move on all three claims. (Docket No. 69.) The remaining Defendants, NBC, 3 Ball Productions, Inc., Reveille, LLC, 25/7 Productions, LLP and Ben Silverman ("NBC Defendants") move on the copyright claim as it is the sole claim against them. (Docket No. 67.)

The motions for summary judgment on the copyright claim are **GRANTED.** For purposes of assessing the motions, the Court considers the different iterations of Milano's treatment as a single work (referenced as "the treatment"), assumes that all of the defendants had access to the treatment, and that concepts found in the treatment are also found in "The Biggest Loser." The remaining question, and the only question to be resolved in the present motion, is whether Milano's treatment is protectable under federal copyright law, which is an issue that this Court can rule on as a matter of law because the content of the treatment, the content of the television programs, and similar television programs in the public domain are not in dispute or are without substantial contro-

versy.[1] In short, even assuming that defendants had access to Milano's treatment, the copyright claim fails because Milano essentially seeks copyright protection for an idea, which runs contrary to the fundamental notion that copyright protects only the expression of ideas. A "substantial similarity" analysis of the treatment for the purpose of identifying protectable elements of expression reveals that the treatment consists principally of stock ideas, "scenes à faire," and numerous elements already in the public domain. Just as important, "The Biggest Loser" incorporates a number of important elements that are fundamental to the television series that are not found in the treatment.

The Court's ruling disposes of the case in its entirety as to Defendants NBC, 3 Ball Productions, Inc., Reveille, LLC, 25/7 Productions, LLP and Ben Silverman ("NBC Defendants"); as to the remaining defendants, the Court does not address the state law claims but rather orders them **DISMISSED** pursuant to 28 U.S.C. § 1367(c)(3).

## II.

## BACKGROUND

### A. FAT TO PHAT

Described in an early version of the treatment as "The Real World' meets 'Richard Simmons'" (Giousman Decl., Ex. 2, at LM3), "Fat to Phat" describes a reality TV show where a group of contestants, four men and four women who want to lose 40 to 100 pounds, are "shacked up" for 13 weeks at a Malibu beach house where they try to lose weight. (*Id.*, at LM4; Ex. 3, at LM14.) For 13 weeks, according to the treatment, "we will watch their personal struggles and victories as they try to change their old unhealthy ways." (*Id.*, Ex. 3, at LM14.)

The program is characterized as reality TV with a purpose through competition but

> at the heart of the format is the group. The relationships they form and the tensions that build from living together. The joy of individual glories and the shame of shared failures. The format will exploit this.

(*Id.*, Ex. 2, at LM4.) In each episode the contestants face difficult "challenges" as a "team of hard-talking, butt-kicking experts" sets weekly goals and penalties. (*Id.*, Ex. 4, at 38.) On Friday—"reward day"—the weekly prizes are handed out, which could include a new wardrobe, a celebrity haircut, or dance lessons with a movie star. (*Id.*, Ex. 4, at 39). In addition, there is a team element as the contestants are offered group goals and, if there is success, a group award, such as "a slap-up meal created by Wolfgang Puck in the house kitchen." (*Id.*) This dynamic increases the tensions as one contestant, potentially, must face the disapproval of his or her housemates. (*Id.*) The show is fast paced and adversarial, yet informative and motivational, teaching both the contestant and the viewer about health, physical exercise and proper nutrition. (*E.g., id.*, Ex. 3, at LM14–15.) The winners are the male and female contestants who have lost the

---

1. Defendants submitted the report of an expert, David Ginsburg, in support of their motion. Plaintiff moves under Rule 56(f) for a continuance so that it can retain an expert and provide rebuttal testimony. The Rule 56(f) motion is **DENIED**. As the Court noted at the hearing, it will not consider the expert's application of the substantial similarity test to the undisputed evidence because the application of that test presents a legal question that the Court has independently considered and resolved. At the same time, the Court notes that the expert's report contains some factual material regarding information in the public domain that is pertinent to the motion, but that information involves no expert analysis and is beyond dispute.

most weight, "but thanks to Fat to Phat, all the contestant achieve their dreams!" (*Id.*, at LM26.). The treatment also includes a number of other elements including:

—the use of an established diet program such as Weight Watchers;

—an educational element featuring pop-up health and motivational tips;

—before and after pictures on each episode;

—daily theme routines (such as boot camp, beach sports, etc.);

—guest celebrity appearances to provide additional motivation;

—sports style commentary from a team of Mind, Boyd and Spirit experts;

—a big screen broadcasting messages of support from viewers; and

—each show ending with a housemate cooking a meal for the group.

## B. THE BIGGEST LOSER

### 1. Season One

The principal elements of "The Biggest Loser" were established in its first season. A group of twelve grossly overweight men and women arrived at a ranch in a remote location where they are greeted by a woman who hosts the competition and, appears from time to time, to reveal a new twist to the competition. It is apparent that the contestants, upon their arrival, know nothing about the structure of their anticipated stay at the ranch. The contestants attended a "weigh in" where their weight and body fat percentage were determined and recorded and they were photographed.

They were then assigned to teams—the red team and the blue team—each with an equal number of men and women. Each team was assigned a trainer—one of whom generally presents a supportive demeanor and provides positive reinforcement and the other of whom "kicks butt" and assumes the role of a drill sergeant, although over the course of the season each of them reveals the capacity to switch roles when necessary. The teams learn that they will be given weekly team challenges—e.g., a timed race at a high school track, a race up the stairwell to the top of the Library Tower—with the winning team being given a reward for its success such as a trip to a spa, or a visit from family members. These weekly challenges created tension between and within the teams, and frequently caused dissension within the failing team, when its members perceived one of their own as not making his or her best effort.

But the most critical dramatic element was revealed when the contestants learned that not all of them would be given a chance at the first prize because the competition was structured to eliminate a contestant every week. The narrator explained to the contestants that the teams would be required to compete in a weekly "weigh off" where the total weight loss for each team would be computed. The team that lost the most weight would be declared the winner and all of its members would survive to compete for another week; the losing team would be required to decide, as a group, which member of the team must leave the ranch.[2] From that point through the end of the series, a

---

2. Though this important element appears nowhere in the treatment, it can hardly be described as unique because the same element is the centerpiece of "Survivor," the first of the recent successful reality television shows. The TV.com website describes survivor this way: "The rules of this game are simple: sixteen average Americans (eighteen in seasons 8, 9, 11 and 17, nineteen in season 14 and twenty in seasons 10, 13 and 16) are abandoned in the middle of some of the most unforgiving places on earth. Divided into teams, they participate in challenges and every three days, the losing tribe must trek to Tribal Council to vote out one of their own." The idea of eliminating contestants is also a key element of "The Weakest Link," a trivia contest in which contestants work both as a team and as individuals where each round of

substantial portion of each episode is devoted to the machinations and back stabbing among team members as they jockey to put themselves in position to win the ultimate prize. This created tension as team members attempted to balance the need to keep strong team members to succeed in competition against their opponents against the prospect that a strong team member might prove to be a formidable obstacle to winning the grand prize. By way of example, the blue team, to the dismay of its low-key fitness trainer, voted off its strongest member early in the competition because other members of the team feared him as a competitor. Thus, while the show purports to present health and nutritional information to the contestants and viewers, the real attraction of the show is the scheming of contestants who are both teammates and adversaries.

### 2. Later Seasons

The basic format of the show remains unchanged in later seasons, but each season contains some variation on the basic theme. For example, in one season the teams are established on gender lines— men against women; in another season a contestant is selected from every state in the union before the final contestants are chosen. In yet another variation, a surprise third team, the black team, headed by the original "butt-kicking" trainer shows up in the middle of an event between the other two teams. With these variations, however, the basic format remains unchanged.

### III.

### DISCUSSION

The questions presented to the Court on the present motions are whether the treatment contains any protectable elements in

the first place, and if so, whether "The Biggest Loser" copies those elements in such a way that it is substantially similar to the treatment. In the following sections the Court discusses the summary judgment standard and relevant copyright principles and then analyzes the treatment concluding, first, that the treatment consists largely, if not entirely, of unprotectable elements and, second, that the treatment and "The Biggest Loser" are not substantial similarity.

### A. SUMMARY JUDGMENT STANDARD

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Thus, when addressing a motion for summary judgment, this Court must decide whether there exist "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In this matter, as noted above, there are no disputed facts as to the content of the two works.

### B. COPYRIGHT PRINCIPLES

■■■ Copyright law protects an author's interest in an original work that has been fixed in a tangible medium that allows it to be "perceived directly or with the aid of a machine or device." 17 U.S.C. § 102(a); *see generally Feist Publications, Inc. v. Rural Tele. Serv. Co.,* 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991).[3] Copyright law does not protect

---

questioning is followed by a vote to eliminate one of the players.

**3.** This point is important in this case because it appears that Milano is claiming infringement of elements of her conception of the

ideas themselves, but rather the **expression** of those ideas. *Feist,* 499 U.S., at 362, 111 S.Ct. 1282 (compilation of unprotectable facts may gain protection through selection and arrangement); *Metcalf v. Bochco,* 294 F.3d 1069, 1074 (9th Cir.2002) (*citing Kouf v. Walt Disney Pictures & Television,* 16 F.3d 1042, 1045 (9th Cir. 1994)). Unprotectable elements include general plot ideas and "scenes à faire," which are scenes that flow naturally from unprotectable basic plot premises and "remain forever the common property of artistic mankind." *Id.* On the other hand, "protectable expression includes the specific details of an author's rendering of ideas, or 'the actual concrete elements that make up the total sequence of events and the relationships between the major characters.'" *Id., citing and quoting from Berkic v. Crichton,* 761 F.2d 1289, 1293 (9th Cir.1985).

▮ These basic principles of copyright law provide the foundation for a copyright infringement claim. To establish copyright infringement, a plaintiff must show that: (1) she owns the copyright; and (2) defendant copied or infringed **protected elements** of the work. *Shaw v. Lindheim,* 919 F.2d 1353, 1356 (9th Cir.1990); 4–13 Melville B. Nimmer, et al., *Nimmer on Copyright* § 13.01 (2005) ("Nimmer"). Absent direct evidence of copying, proof of infringement involves fact-based showings that (1) the defendant had access to the plaintiff's work; and (2) the two works are "substantially similar."

*E.g., Funky Films, Inc. v. Time Warner Entm't Co.,* 462 F.3d 1072, 1076 (9th Cir. 2006) (*citing Three Boys Music Corp. v. Bolton,* 212 F.3d 477, 481 (9th Cir.2000)). Where a high degree of access is shown, courts require a lower standard of proof for substantial similarity. *Swirsky v. Carey,* 376 F.3d 841, 844 (9th Cir.2004) (*citing Bolton,* 212 F.3d at 485).

▮ In determining whether two works are substantially similar on summary judgment, the court employs the "extrinsic test," which objectively measures the "articulable similarities between the plot, themes, dialogue, mood, setting, pace, characters, and sequence of events." *Rice,* 330 F.3d at 1174 (*quoting Kouf,* 16 F.3d at 1045). In applying the extrinsic test, the court "compares, not the basic plot ideas for stories, but the actual concrete elements that make up the total sequence of events and the relationships between the major characters." *Funky Films,* 462 F.3d at 1077 (*quoting Berkic,* 761 F.2d at 1293).[4] Courts "must take care to inquire only whether the **protect[a]ble elements, standing alone,** are substantially similar." *Cavalier v. Random House, Inc.,* 297 F.3d 815, 822 (9th Cir.2002) (citations and internal quotation marks omitted) (emphasis in original); *see also* Nimmer § 14.03 ("[A]n essential element of an infringement case is that 'plaintiff must show that defendants' works are substantially similar to elements of plaintiff's work that are **copyrightable** or **protected** by the copyright.' When similar works resemble each other

show, even though some elements were never included in the treatment. Milano claims that for "From Fat to Phat" (also referred to simply as "Fat to Phat") it was decided to have "red and blue as the colors for the two teams." (Opp. to Twentieth at 3; Tenney Decl., Ex. 1 [Milano Depo. Tr. at 77:4–5].) However, none of the treatments mention using the colors red or blue (nor, for that matter, do the treatments explicitly mention two teams). Another example is Milano's claim

that "Fat to Phat" involved a "stylized oversized scale" (NBC Resp. Pltf. SSUMF ¶ 78) which is found nowhere in her treatments.

4. A second test, the subjective "intrinsic test," is a question left to a jury if the works are found to be substantially similar under the "extrinsic test," and the case survives summary judgment. *Swirsky,* 376 F.3d at 845. At summary judgment, courts apply only the extrinsic test. *Funky Films,* 462 F.3d at 1077.

only in those unprotected elements, then defendant prevails.") (citation omitted and emphasis in original).

*Berkic v. Crichton*, 761 F.2d 1289, 1293 (9th Cir.1985), provides helpful guidance on this point. In *Berkic*, a case that compared two works involving the murder of healthy young people for the purpose of removing and selling their organs to wealthy older people in need of organ transplants, the Ninth Circuit plainly stated:

> No one can own the basic idea for a story. General plot ideas are not protected by copyright law; they remain forever the common property of artistic mankind.

*Id.* Thus, in *Berkic*, even though the plot lines revealed "a certain gruesome similarity," that similarity in expression did not give rise to a viable infringement claim because the plot line itself was not protectable. *Id.* Later decisions have emphasized this point, admonishing trial courts to distinguish between the protectable and unprotectable material because only similarity in protected material will give rise to a claim for infringement. *Funky Films*, 462 F.3d, at 1077 (9th Cir.2006) (*citing Cavalier*, 297 F.3d at 822).

### C. APPLICATION

■ The Court first notes that the treatment is largely conceptual and describes what is essentially an idea, which is not protected under copyright. *Berkic* teaches that even very similar ideas that are incorporated into movie plots cannot be protected where there is no substantial similarity in the expression of the ideas. Here the treatment articulates very commonplace ideas, which include the following:

(1) A competition or game (game shows have been a television staple since at least the late 1950's when shows such as the "$64,000 Question," "Concentration," "What's My Line," and "Twenty One" first aired);

(2) Since the program contemplated a game or contest, it necessarily required (*see* "scenes à faire" above) contestants who played the game;

(3) As a competition, in this case, a contest to see who could lose the most weight, contestants would receive rewards and prizes. In this case some prizes or awards might be given in specific contests within the overall context of the program, with a grand prize awarded at the end of the show to the person with the greatest weight loss;

(4) As a weight loss competition, the program would involve exercise and fitness activities and would focus on the struggles of the contestants all of whom were grossly overweight and seriously out of shape. Fitness tips would be included in the program;

(5) Likewise, as a weight loss competition, the program would include scenes involving discussions of diet and healthy eating and would include diet tips. Milano's treatments proposed using well known dietary programs as an aspect of the program;

(6) Exercise and dietary experts would act in an advisory capacity to assist the contestants in losing weight;

(7) The program would also use such common ideas as weigh-ins, before and after photographs, and some group challenges that would require the contestants to work as a team.

The treatment also described a program that is a variation on the current rage for so-called "reality" programming (which is not real at all but rather involves placing non-actors in contrived situations). Plainly the "reality" aspect of the show could hardly be considered original or protectable because a rash of such shows, including "Survivor," "Big Brother," "Fear Factor,"

and "The Great Race," aired before the "Fat to Phat" treatment had been prepared. Thus, the treatment can be seen as an effort to exploit the trend in a new and different context. However, even in that respect it was not unique or original because, as described in this record, several reality weight loss programs were in the public domain before the treatment was developed. Ginsburg lists several of them which include: "Taking It Off," "Big Diet," "The Discovery Health Body Challenge," "Get Fit Today," "The Dateline Diet Challenge," "Dr. Phil's Weight Loss Challenge," and "Fat Chance." Plaintiff simply cannot succeed in this case by claiming a copyright in the idea of a television show based on a weight loss competition.

■■■ Despite the foregoing, Plaintiff asserted in her complaint—paragraphs 31 and 36 in particular—that there are "substantial similarities" between her treatment and "The Biggest Loser." Application of the test is somewhat difficult because the treatment speaks in such general terms, but the following discussion utilizes the "extrinsic test" in an effort to measure the "articulable similarities between the plot, themes, dialogue, mood, setting, pace, characters, and sequence of events." *Rice*, 330 F.3d at 1174 (*quoting Kouf*, 16 F.3d at 1045).

*Plot*: The treatment describes no plot as that term is normally used. Rather, it outlines a contest structure which, as noted, is not original and therefore not protectable. The plot in "The Biggest Loser" (as in all reality programming) essentially developed extemporaneously as the viewer observes what happens when the contestants live out the experience in front of omnipresent cameras recording their every move. However, "The Biggest Loser" contains several key elements (whether characterized as "theme" or "plot") not

found in the treatment. First, the contestants are assigned to two teams (red and blue) that compete against each other for interim prizes and awards through weekly team challenges. Then, at the end of the week, the teams were be subjected to a competitive "weigh in" to compare the total weekly weight loss for the two teams. The team that lost the least amount of weight would be required to caucus, confer and then take a vote for the purpose of eliminating one of their teammates from further participation. It is this aspect of "The Biggest Loser" that creates much of the program's drama because of the psychological stress it places on the contestants. Teammates, though necessarily supportive of one another in the weekly challenge and other aspects of the competition, were required to "turn on" their members as a matter of self-interest. As in "Survivor" and other game shows that require collaboration as a step to self-promotion, the "vote off" required contestants to consider whether to keep their stronger members who were important to team success in the short run or to eliminate them because they may be tougher competition for the ultimate prize.[5] Through these elements, none of which appear in the treatment, a "plot" emerges as the participants, through the dynamic of the game, reveal their character and begin to assume specific roles.

*Character*: The treatment discusses what might be called stock characters or types, but nothing beyond that. For example, the treatment describes a young man who cannot be a firefighter because he is overweight, and a scorned wife who, after gaining weight, lost her husband to a younger, slimmer woman. The treatment explains that their personal stories will make up an important part of the program. While this is no doubt true, it is not

---

**5.** This element can be found in the prior art in "Survivor," and "The Weakest Link."

a description of any particular participant who will compete on the program because reality shows do not involve fictional characters. Character is developed entirely through the dynamic interaction of the contestants over the course of the program. Some are revealed as weak, some strong, some honest and ethical, others completely lacking in integrity, some are motivated and eager participants, others are lazy. The character of the "characters" is revealed as they are placed under physical and psychological stress throughout the competition. In addition, the treatment mentions fitness trainers, which would necessarily be a part of this sort of competition. "The Biggest Loser" adds the element of contrasting styles, where one of the trainers uses primarily positive reinforcement, while the other operates more as a drill sergeant. Finally, "The Biggest Loser" also adds a host, a character not found in the treatment, who plays an important role in the television program by periodically revealing new twists to the competition.

*Themes*: The treatment includes themes of competition, weight loss, diets, fitness programs, and the like. However, as discussed above, these themes are really ideas that are not protectable. The complaint does not identify the existence of protectable themes or the substantial similarity between those themes and the themes incorporated in "The Biggest Loser."

*Setting*: The treatment sets the competition at a Malibu beach house. "The Biggest Loser" is set at a remote inland location. In that sense they are not similar. The Court notes that both locations contain similarities: both are elegant, both contain fitness equipment and comfortable accommodations, both offer outdoor exercise at the front door. However, these commonplace similarities are not protecta-

ble and provide no basis for a copyright claim.

*Dialog/Mood*: The treatment contains no dialog because it is not relevant to reality programming.

Finally, the Court notes that a number of the elements proposed by the treatment are not found in "The Biggest Loser." These include: the Malibu beach house mentioned above, the use of a recognized weight loss or dietary program (such as Weight Watchers or Atkinson), celebrity guests and guest trainers, no team competition, a daily format that begins at the same time each episode, the use of "before" pictures at the beginning of each episode, the use of a "Mind, Body and Spirit" team of experts that provides running sports-style commentary regarding the action, and a large screen in the house that broadcasts messages of support from viewers.

In short, the treatment and "The Biggest Loser" contain similarities but in elements that are not protectable. "The Biggest Loser" contains important elements not found in the treatment, and the treatment includes many elements not found in the program. Under the substantial similarity test, the copyright infringement claim fails.

## IV.

## CONCLUSION

For the foregoing reasons, the Court concludes that Defendants' motions for summary judgment on the copyright claim are meritorious and are therefore **GRANTED.** Pursuant to 28 U.S.C. § 1367(c)(3), the Court **DISMISSES** the pending state law claims **WITHOUT PREJUDICE,** however, the Court notes that nothing in this memorandum and order is meant to offer any suggestion re-

garding the merits of those state law claims.

IT IS SO ORDERED.