**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

AUG 1 2018

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| JON ASTOR-WHITE, an individual, | No. 16-55565 |
| Plaintiff-Appellant, | D.C. No. 2:15-cv-06326-PA-RAO |
| v. | |
| DANIEL WILLIAM STRONG, AKA Strong; et al., | MEMORANDUM* |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the Central District of California
Percy Anderson, District Judge, Presiding

Argued and Submitted May 14, 2018
Pasadena, California

Before: WARDLAW, NGUYEN, and OWENS, Circuit Judges.

Jon Astor-White appeals from the district court's Rule 12(b)(6) dismissal of

his first amended complaint. He alleges that defendants' television series *Empire*

infringed upon his copyrighted treatment of a television series entitled *King*

*Solomon*. We have jurisdiction under 28 U.S.C. § 1291. We review de novo the

district court's dismissal under Federal Rule of Civil Procedure 12(b)(6),

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

*Rentmeester v. Nike*, 883 F.3d 1111, 1116–17 (9th Cir. 2018), and we affirm in part, reverse in part, and remand.

1.     Although Astor-White did not plead sufficient facts to state a claim for copyright infringement, the district court abused its discretion by denying Astor-White the opportunity to amend his pro se first amended complaint. Dismissal with prejudice is appropriate only if a complaint "could not be saved by any amendment." *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008). Here, that is not the case.

2.     To state a claim for copyright infringement, Astor-White must establish facts plausibly showing that the defendants copied the protected elements in his literary work. *See Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 481 (9th Cir. 2000). A plaintiff may satisfy this element by showing either that the two works in question are strikingly similar, or by showing that they are substantially similar and that the defendant had access to the plaintiff's work. *See id*. at 481, 485. In the absence of direct evidence of access, a plaintiff can show that a chain of events linked the protected work to the defendant, or that the work had been widely disseminated. *See id*. at 482. Astor-White's first amended complaint did not adequately allege copying of a protected work under any of these theories.

3.     However, Astor-White could have amended his first amended complaint to cure this deficiency in several ways, and he requested that he be

allowed to do so. To allege striking or substantial similarity, Astor-White could have alleged facts specifically showing the similarities between the two works and therefore presented "a triable issue of fact regarding substantial similarity of protected expression." *See Shaw v. Lindheim*, 919 F.2d 1353, 1363 (9th Cir. 1990). Astor-White's second amended complaint could focus on the similarities, particularly important where the author of a treatment alleges infringement by a now full season-long series.[1] "Even if a copied portion [of a work] be relatively small in proportion to the entire work, if qualitatively important, the finder of fact may properly find substantial similarity." *Id*. (quoting *Baxter v. MCA, Inc.*, 812 F.2d 421, 425 (9th Cir. 1987)). And to allege access, as Astor-White's briefing demonstrates, Astor-White could plead facts describing a plausible chain of events linking the *King Solomon* treatment to defendants. Because these allegations could cure the first amended complaint's deficiencies, the district court's conclusion that another amendment would be futile was incorrect.

**AFFIRM IN PART; REVERSE IN PART; and REMAND.**[2]

**Each side shall bear its own costs of appeal.**

---

[1] Only the first season of *Empire* is under consideration.
[2] Because we find that the district court did not err in dismissing this action based on the facts alleged in the pro se first amended complaint, but did abuse its discretion in denying leave to amend, we do not reach whether it also erred in declining to consider expert testimony regarding substantial similarity.

*Astor-White v. Strong*, No. 16-55565

WARDLAW, Circuit Judge, concurring:

The district court and the dissent's determination of futility on the basis of the lack of substantial similarity threatens the copyright protection for treatments,[1] long recognized as a genre of protected literary works, 17 U.S.C. § 102(a)(1), and disregards their very nature. Moreover, dismissal of a complaint for lack of substantial similarity before any discovery is virtually unheard of.[2] The dissent relies exclusively on cases decided at the summary judgment stage, with one notable exception, *Rentmeester v. Nike Inc.*, 883 F.3d 1111 (9th Cir. 2018), a case

---

[1] A treatment is a brief written work, typically under twenty-five pages, that embodies the writer's idea and normally contains the title, basic plot, characters, episode ideas, or more. 6 Thomas D. Selz et al., *Entertainment Law 3d* Appendix I (2017); Marc S. Lee, *Entertainment and Intellectual Property Law* § 11:9 (2017); *How to Write a Film Treatment*, http://www.tft.ucla.edu/mfadirectingscholarship-treatment-example/ (last visited July 20, 2018).

[2] Indeed, our court has never affirmed the dismissal of a case alleging infringement of a literary work without discovery in a published opinion. The only cases affirming a dismissal for lack of substantial similarity are *Rentmeester v. Nike Inc.*, 883 F.3d 1111 (9th Cir. 2018), which involved photographs, and *Christianson v. West Pub. Co.*, 149 F.2d 202 (9th Cir. 1945), which involved maps.

Moreover, we have applied the substantial similarity test to a treatment in only one case, *Berkic v. Crichton,* which was at the summary judgment stage, and involved a fifty-four page treatment—substantially longer than the six page *King Solomon* treatment. *Berkic v. Crichton*, 761 F.2d 1289 (9th Cir. 1985); *cf. Metcalf v. Bochco*, 294 F.3d 1069 (9th Cir. 2002) (applying the substantial similarity test at summary judgment comparing both a treatment and script to a television series, but not applying the test to the treatment alone).

involving photographs, which fall within an entirely separate subject matter of copyright protection, pictorial, graphic and sculptural works, 17 U.S.C. § 102(a)(5). And *Rentmeester*, which justified its dismissal "because the two [works] are properly before us and thus capable of examination and comparison," *Rentmeester*, 883 F.3d at 1123 (quotation omitted), is itself under question, as its approach is not found anywhere else in Ninth Circuit precedent, except a case which did a "side-by-side" comparison of two maps of the United States. *Christianson v. West Pub. Co.*, 149 F.2d 202 (9th Cir. 1945).

Not many laypersons, much less judges, are trained in the process of developing a short treatment into a fully developed television show. What the district court did here illustrates that comparing a treatment to a completed work requires specialized knowledge of how treatments are developed into completed television shows. In its side-by-side comparison of the copyright-registered six page treatment of *King Solomon* to a full season one of *Empire*, the district court found repeated differences. [3] But of course differences are inevitable, because change is exactly what happens as a treatment is developed into a fully realized

---

[3]    Though opinions have often evaluated differences between works when applying the substantial similarity test, *See e.g.*, *Funky Films*, 462 F.3d at 1078, the test requires evaluating the "articulable similarities between the plot, themes, dialogue, mood, setting, pace, characters, and sequence of events." *Kouf v. Walt Disney Pictures and Television*, 16 F.3d 1042, 1045 (9th Cir. 1994).

work.  *See* Thomas D. Selz et al., *Entertainment Law 3d* § 20:3 (2017) (noting that a story's development continues even after a script is completed, and as a result a film may depart from the final script).  What the district court should have focused on were the similarities that remained throughout the development process.

Moreover, neither the district court nor the dissent acknowledge the revolutionary nature of Astor-White's treatment at the time it was written.  While diversity in television still has a long way to go, a lot has changed on primetime television in the 11 years since Astor-White wrote the treatment for *King Solomon*.  In the decades prior, black families were mostly represented, if at all, on sitcoms.[4]  Only 6 years ago, in 2012, did Kerry Washington debut as Olivia Pope in *Scandal* on the ABC network as the first black female lead in almost 40 years.[5]  The rise of TV shows featuring complex, black lead characters is recent, and Astor-White created *King Solomon* on the revolution's precipice.  Both *King Solomon* and *Empire* are about a black record business mogul with complex family dynamics and who competes with a rival record company owned by a white man involved in

---

[4]    Britt Julious, *Family Matters: How Shows Like Empire Are Redefining Black Families on TV*, GQ (Oct. 27, 2016), https://www.gq.com/story/family-matters-how-shows-like-empire-are-redefining-black-families-on-tv.

[5]    Angelica Jade Bastién, *Claiming the Future of Black TV*, The Atlantic (Jan. 29, 2017), https://www.theatlantic.com/entertainment/archive/2017/01/claiming-the-future-of-black-tv/514562/

organized crime. *Empire* premiered in 2015 and is credited "as one of the clear and first runaway hits for representation of black people" and "represent[s] a dynamic, that for the most part, has not been seen."[6] The district court dismissed this claim on the basis that the storyline in *King Solomon* and its many similarities with *Empire* were generic. However, judges have no particular expertise in determining what is and is not generic in cases like these, where the judge could not have seen a similar show at the time it was written. Discovery and the expertise of persons who understand the landscape of television at the time *King Solomon* was written would have greatly informed the decision as to substantial similarity.

That is why I do not think that amendment was futile. The complaint was prepared pro se by Mr. Astor-White himself; the district court judge performed the entire substantial analysis himself, in chambers, without the benefit of even a hearing, much less discovery and an expert witness. Finally, substantial similarity is "a question of fact uniquely suited for determination by the trier of fact." *Jason v. Fonda*, 526 F. Supp. 774, 777 (C.D. Cal. 1981), *incorp'd by ref*, 698 F.2d 966 (9th Cir. 1982). Thus, summary judgment "is not highly favored on the substantial similarity issue in copyright cases," *Funky Films*, 462 F.3d 1072, 1076 (9th Cir. 2006) (quotations omitted), and should be even more disfavored on a motion to

---

[6]     Julius, *supra* note 4.

4

dismiss.

*Astor-White v. Strong*, No. 16-55565

NGUYEN, Circuit Judge, concurring in part and dissenting in part:

I agree with the majority that the district court properly dismissed Astor-White's first amended complaint. However, I would also affirm the denial of leave to amend. Because *Empire* and *King Solomon* are not substantially similar as a matter of law, amendment would be futile.

As we recently clarified in *Rentmeester v. Nike, Inc.*, 883 F.3d 1111 (9th Cir. 2018), there are two distinct aspects to copying protected expression: 1) actual copying[1] that is 2) unlawful. *See id.* at 1117; *id.* at 1124 ("[A]fter proving that the defendant's work is the product of copying rather than independent creation, the plaintiff must still show copying of protected expression that amounts to unlawful appropriation."). The majority discusses only the first aspect—actual copying. And while it may be that Astor-White could plead additional facts to show the defendants had access to his treatment or that there are otherwise enough similarities between the works to give rise to an inference of copying, this does nothing to satisfy the second aspect—unlawful appropriation. *See id.* at 1124–25.

---

[1] As the majority notes, Maj. at 2, copying can be established by showing a defendant had access to the work and/or that the number of similarities in the works make it implausible that the works were developed independently of one another. *See Rentmeester*, 883 F.3d at 1117, 1124; *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 481, 485 (9th Cir. 2000).

1

As to unlawful appropriation, the court must apply the extrinsic test, the first step of which is to "filter out and disregard" what is not protectable in the allegedly infringed-upon work.  *See Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002); *see also Rentmeester*, 883 F.3d. at 1118–19.  This is critically important; we "must take care to inquire only whether the *protectable elements, standing alone*, are substantially similar."  *Funky Films, Inc. v. Time Warner Entm't Co.*, 462 F.3d 1072, 1077 (9th Cir. 2006) (internal quotation marks omitted).  "It is well established that, as a matter of law, certain forms of literary expression are not protected against copying."  *Berkic v. Crichton*, 761 F.2d 1289, 1293 (9th Cir. 1985).  These include "the general idea for a story" and "all situations and incidents which flow naturally from a basic plot premise."  *Id.*; *see also Frybarger v. Int'l Bus. Machs. Corp.*, 812 F.2d 525, 529 (9th Cir. 1987).  After filtering out the unprotectable elements of the "plot, themes, dialogue, mood, setting, pace, characters, and sequence of events" of two works, we see whether any "articulable similarities" remain.  *Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1174 (9th Cir. 2003) (internal quotation marks omitted).

The district court did just that here and correctly concluded that the two works are not substantially similar as a matter of law.[2]  The overarching ideas of "a

---

[2] Whether an element of a work is protectable is a question of law.  While expert testimony may be helpful for the factual question of whether protectable elements are substantially similar, there is no need for an expert where, like here,

Black Record Business Mogul and his family" and "the inner-workings of the billion dollar record business, and [its] effects on the [] family" are common between the two works. In fact, this is the main similarity. This idea is not protectable. *See Funky Films*, 462 F.3d at 1081 (no copyright protection for ideas of "the family-run funeral home, the father's death, and the return of the 'prodigal son,' who assists his brother in maintaining the family business"); *Cavalier*, 297 F.3d at 824 (no copyright protection for "general premise of a child, invited by a moon-type character, who takes a journey through the night sky and returns safely to bed to fall asleep"); *Olson v. Nat'l Broad. Co.*, 855 F.2d 1446, 1450 (9th Cir. 1988) (no copyright protection for idea of "group action-adventure series designed to show Vietnam veterans in a positive light"); *Berkic*, 761 F.2d at 1293 (no copyright protection for ideas of "criminal organizations that murder healthy young people, then remove and sell their vital organs to wealthy people in need of organ transplants" or "the adventures of a young professional who courageously investigates, and finally exposes, the criminal organization"); *Jason v. Fonda*, 526 F. Supp. 774, 777 (C.D. Cal. 1981), *incorp'd by reference*, 698 F.2d 966, 967 (9th

there are no protectable similarities between the two literary works. *See, e.g.*, *Benay v. Warner Bros. Entm't*, 607 F.3d 620, 625–29 (9th Cir. 2010) (deciding there was no substantial similarity as a matter of law by comparing screenplay and film without reference to expert testimony); *Funky Films, Inc. v. Time Warner Entm't Co.*, 462 F.3d 1072, 1076–81 (9th Cir. 2006) (same, for screenplay and television series); *Berkic v. Crichton*, 761 F.2d 1289, 1293–94 (9th Cir. 1985) (same, for screenplay and movie).

3

Cir.1982) (no copyright protection for ideas "deal[ing] generally with subjects such as morality and the effects of war on women, injured veterans and soldiers").

Nor are there protectable similarities in the plot, sequence of events, setting, or characters. The plots of both works involve the daily operation of a black record mogul's family business. "Aside from that rather uneventful similarity, the plots of the two stories develop quite differently." *See Funky Films*, 462 F.3d at 1078. The major plot points identified in the *King Solomon* treatment do not appear in *Empire*—namely, Joe dropping out of college; Jenny's burgeoning career as an actress and King's disapproval of it; Jenny's elaborate birthday party; Jake returning to his life of crime; the large role of the rival company, its backstory of being funded by the mob, and its forcing the company's artists to partake in the mob's business endeavors; and the negotiation (and renegotiation) between King and his difficult artists.[3] The general plot points that do occur in both works happen in different orders. For instance, Cookie is released from prison at the beginning of the series, whereas Jake is not released from prison until later; and King long-ago remarried his childhood sweetheart and started a family with her,

---

[3] On the other hand, the first three major plot points in *Empire* are Lucious's ALS diagnosis, Cookie's release from prison, and the company going public.

4

whereas Lucious proposes to Anika part-way through the season and his children are with Cookie.[4]

*King Solomon* is set in Hollywood, and *Empire* is set in New York. Los Angeles and New York are both urban centers that have large entertainment scenes, but these traits are necessary to the idea that the shows are about an entertainment mogul. *See Cavalier*, 297 F.3d at 824 (holding that the setting of the night sky "naturally and necessarily flow[ed] from the basic plot premise of a child's journey through the night sky; therefore, the night sky setting constitutes scenes-a-faire and cannot support a finding of substantial similarity"). Of course, Hollywood and New York are not the same place, despite some shared characteristics.

Finally, numerous character traits and story lines outlined in *King Solomon* are not present, or are presented differently, in *Empire*. King is Harvard-educated, while Lucious learned the industry as a rapper himself, and Cookie is a co-protagonist with Lucious in *Empire* who does not appear to have a counterpart in *King Solomon*. *See Funky Films*, 462 F.3d at 1078–79 (rejecting appellants' "attempt to link up" the main characters in the works because the expression of the generic traits of those characters was different and highlighting the difference in

---

[4] There is not a "sufficiently concrete" or "particular" sequence to these similarities to warrant a substantial similarity finding under *Metcalf v. Bochco*, 294 F.3d 1069 (9th Cir. 2002).

5

"complexity" of the allegedly comparable characters). And *King Solomon* uses "actual recording stars appearing and performing their hits, or introducing their new material"—a major component of the show, per the treatment—but *Empire* has its own actors play the recording artists and clients, features original music, and only has real stars on once in a while.

I am concerned that the majority's failure to apply the extrinsic test will create confusion for the parties and the district court on remand. The majority states that the "second amended complaint could focus on the similarities" between the two works. Maj. at 3. But what additional facts could change the outcome here? Both works were before the district court (as they are now before us) for review. The extrinsic test requires us to review the works, filter out unprotectable elements, and then decide as a matter of law whether the remaining similarities are sufficiently substantial to allow Astor-White to proceed with his copyright infringement claim. Yet the majority does not engage with how or why the district court should come to a different conclusion regarding unlawful appropriation the second time around, nor do I think it could.

I would affirm the dismissal without leave to amend.