FOR PUBLICATION

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

JACOBUS RENTMEESTER,
*Plaintiff-Appellant*,

v.

NIKE, INC., an Oregon
corporation,
*Defendant-Appellee.*

No. 15-35509

D.C. No.
3:15-cv-00113-MO

OPINION

Appeal from the United States District Court
for the District of Oregon
Michael W. Mosman, Chief District Judge, Presiding

Argued and Submitted July 11, 2017
Portland, Oregon

Filed February 27, 2018

Before: Marsha S. Berzon, Paul J. Watford,
and John B. Owens, Circuit Judges.

Opinion by Judge Watford;
Partial Concurrence and Partial Dissent by Judge Owens

**SUMMARY**[*]

**Copyright**

The panel affirmed the district court's dismissal of a copyright infringement action brought by photographer Jacobus Rentmeester against Nike, Inc.

Rentmeester alleged that Nike infringed his copyright in a photograph of Michael Jordan when it commissioned its own photograph of Jordan and then used that photo to create its "Jumpman" logo.

The panel held that Rentmeester plausibly alleged the first element of his copyright claim—that he owned a valid copyright in his photo. He also plausibly alleged the "copying" component of the second element because Nike's access to Rentmeester's photo, combined with the obvious conceptual similarities between the two photos, was sufficient to create a presumption that the Nike photo was the product of copying rather than independent creation.

Rentmeester did not, however, plausibly allege that Nike copied enough of the protected expression from his photo to establish unlawful appropriation. The panel held that Rentmeester could not copyright the pose in the photograph, and he was entitled to protection only for the way the pose was expressed, including the camera angle, timing, and shutter speed he chose. The panel explained that a photographer's copyright is limited to the particular selection

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

and arrangement of the elements expressed in the copyrighted image. The panel held that Rentmeester's photo was entitled to broad rather than thin protection because the range of creative choices open to him in producing the photo was exceptionally broad. Nonetheless, Rentmeester did not plausibly allege that his photo and the Nike photo were substantially similar under the extrinsic test because there were differences in selection and arrangement of elements, as reflected in the photos' objective details. The panel concluded that, therefore, the Jumpman logo also was not substantially similar to Rentmeester's photo.

Concurring in part and dissenting in part, Judge Owens agreed with most of the majority's analysis, and with its holding that Rentmeester could not prevail on his Jumpman logo copyright infringement claim. Judge Owens disagreed with the majority's conclusion as to the Nike photo on the basis that questions of substantial similarity are inherently factual and should not have been resolved at the dismissal stage.

---

## COUNSEL

Dean M. Harvey (argued), Katherine C. Lubin, and Eric B. Fastiff, Lieff Cabraser Heimann & Bernstein LLP, San Francisco, California; Cody Hoesly, Larkins Vacura LLP, Portland, Oregon; for Plaintiff-Appellant.

Dale Cendali (argued), Johanna Schmitt, and P. Daniel Bond, Kirkland & Ellis LLP, New York, New York; Jon Stride, Tonkon Torp LLP, Portland, Oregon; for Defendant-Appellee.

**OPINION**

WATFORD, Circuit Judge:

This is a copyright infringement action brought by the renowned photographer Jacobus Rentmeester against Nike, Inc.  The case involves a famous photograph Rentmeester took in 1984 of Michael Jordan, who at the time was a student at the University of North Carolina.  The photo originally appeared in *Life* magazine as part of a photo essay featuring American athletes who would soon be competing in the 1984 Summer Olympic Games.  We are asked to decide whether Nike infringed Rentmeester's copyright when it commissioned its own photograph of Jordan and then used that photo to create one of its most iconic trademarks.

I

The allegations in Rentmeester's complaint, which we accept as true at this stage of the proceedings, establish the following.  Rentmeester's photograph of Jordan, reproduced in the Appendix, is highly original.  It depicts Jordan leaping toward a basketball hoop with a basketball raised above his head in his left hand, as though he is attempting to dunk the ball.  The setting for the photo is not a basketball court, as one would expect in a shot of this sort.  Instead, Rentmeester chose to take the photo on an isolated grassy knoll on the University of North Carolina campus.  He brought in a basketball hoop and backboard mounted on a tall pole, which he planted in the ground to position the hoop exactly where he wanted.  Whether due to the height of the pole or its placement within the image, the basketball hoop appears to tower above Jordan, beyond his reach.

Rentmeester instructed Jordan on the precise pose he wanted Jordan to assume. It was an unusual pose for a basketball player to adopt, one inspired by ballet's *grand jeté*, in which a dancer leaps with legs extended, one foot forward and the other back. Rentmeester positioned the camera below Jordan and snapped the photo at the peak of his jump so that the viewer looks up at Jordan's soaring figure silhouetted against a cloudless blue sky. Rentmeester used powerful strobe lights and a fast shutter speed to capture a sharp image of Jordan contrasted against the sky, even though the sun is shining directly into the camera lens from the lower right-hand corner of the shot.

Not long after Rentmeester's photograph appeared in *Life* magazine, Nike contacted him and asked to borrow color transparencies of the photo. Rentmeester provided Nike with two color transparencies for $150 under a limited license authorizing Nike to use the transparencies "for slide presentation only." It is unclear from the complaint what kind of slide presentation Nike may have been preparing, but the company was then beginning its lucrative partnership with Jordan by promoting the Air Jordan brand of athletic shoes.

In late 1984 or early 1985, Nike hired a photographer to produce its own photograph of Jordan, one obviously inspired by Rentmeester's. In the Nike photo, Jordan is again shown leaping toward a basketball hoop with a basketball held in his left hand above his head, as though he is about to dunk the ball. *See* Appendix. The photo was taken outdoors and from a similar angle as in Rentmeester's photo, so that the viewer looks up at Jordan's figure silhouetted against the sky. In the Nike photo, though, it is the city of Chicago's skyline that appears in the background, a nod to the fact that by then Jordan was playing professionally for the Chicago Bulls.

Jordan wears apparel reflecting the colors of his new team, and he is of course wearing a pair of Nike shoes.  Nike used this photo on posters and billboards as part of its marketing campaign for the new Air Jordan brand.

When Rentmeester saw the Nike photo, he threatened to sue Nike for breach of the limited license governing use of his color transparencies.  To head off litigation, Nike entered into a new agreement with Rentmeester in March 1985, under which the company agreed to pay $15,000 for the right to continue using the Nike photo on posters and billboards in North America for a period of two years.  Rentmeester alleges that Nike continued to use the photo well beyond that period.

In 1987, Nike created its iconic "Jumpman" logo, a solid black silhouette that tracks the outline of Jordan's figure as it appears in the Nike photo.  *See* Appendix.  Over the past three decades, Nike has used the Jumpman logo in connection with the sale and marketing of billions of dollars of merchandise.  It has become one of Nike's most recognizable trademarks.

Rentmeester filed this action in January 2015.  He alleges that both the Nike photo and the Jumpman logo infringe the copyright in his 1984 photo of Jordan.  His complaint asserts claims for direct, vicarious, and contributory infringement, as well as a claim for violation of the Digital Millennium Copyright Act, 17 U.S.C. § 1202.  Rentmeester seeks damages only for acts of infringement occurring within the Copyright Act's three-year limitations period (January 2012 to the present).  Doing so avoids the defense of laches that would otherwise arise from his 30-year delay in bringing suit.

*See Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962, 1970 (2014).

The district court granted Nike's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). The court dismissed Rentmeester's claims with prejudice after concluding that neither the Nike photo nor the Jumpman logo infringe Rentmeester's copyright as a matter of law. We review that legal determination *de novo*.

II

To state a claim for copyright infringement, Rentmeester must plausibly allege two things: (1) that he owns a valid copyright in his photograph of Jordan, and (2) that Nike copied protected aspects of the photo's expression. *See Feist Publications, Inc. v. Rural Telephone Service Co.*, 499 U.S. 340, 361 (1991); *Shaw v. Lindheim*, 919 F.2d 1353, 1356 (9th Cir. 1990).

Although our cases have not always made this point explicit, the second element has two distinct components: "copying" and "unlawful appropriation." *Sid & Marty Krofft Television Productions, Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1164–65 (9th Cir. 1977); *Arnstein v. Porter*, 154 F.2d 464, 468 (2d Cir. 1946); 4 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 13.01[B] (2017). Proof of copying by the defendant is necessary because independent creation is a complete defense to copyright infringement. No matter how similar the plaintiff's and the defendant's works are, if the defendant created his independently, without knowledge of or exposure to the plaintiff's work, the defendant is not liable for infringement. *See Feist*, 499 U.S. at 345–46. Proof of unlawful appropriation—that is, *illicit*

copying—is necessary because copyright law does not forbid all copying. The Copyright Act provides that copyright protection does not "extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in [the copyrighted] work." 17 U.S.C. § 102(b). Thus, a defendant incurs no liability if he copies only the "ideas" or "concepts" used in the plaintiff's work. To infringe, the defendant must also copy enough of the plaintiff's expression of those ideas or concepts to render the two works "substantially similar." *Mattel, Inc. v. MGA Entertainment, Inc.*, 616 F.3d 904, 913–14 (9th Cir. 2010).

When the plaintiff lacks direct evidence of copying, he can attempt to prove it circumstantially by showing that the defendant had access to the plaintiff's work and that the two works share similarities probative of copying. *See Baxter v. MCA, Inc.*, 812 F.2d 421, 423 (9th Cir. 1987); 4 Nimmer on Copyright § 13.01[B]. Such proof creates a presumption of copying, which the defendant can then attempt to rebut by proving independent creation. *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 486 (9th Cir. 2000).

Unfortunately, we have used the same term—"substantial similarity"—to describe both the degree of similarity relevant to proof of copying and the degree of similarity necessary to establish unlawful appropriation. The term means different things in those two contexts. To prove copying, the similarities between the two works need not be extensive, and they need not involve protected elements of the plaintiff's work. They just need to be similarities one would not expect to arise if the two works had been created independently. *Laureyssens v. Idea Group, Inc.*, 964 F.2d 131, 140 (2d Cir. 1992); 4 Nimmer on Copyright § 13.01[B]. To prove

unlawful appropriation, on the other hand, the similarities between the two works must be "substantial" and they must involve protected elements of the plaintiff's work. *Laureyssens*, 964 F.2d at 140.[1]

In this case, Rentmeester has plausibly alleged the first element of his infringement claim—that he owns a valid copyright. The complaint asserts that he has been the sole owner of the copyright in his photo since its creation in 1984. And the photo obviously qualifies as an "original work of authorship," given the creative choices Rentmeester made in composing it. *See* 17 U.S.C. § 102(a)(5); *Burrow-Giles Lithographic Co. v. Sarony*, 111 U.S. 53, 60 (1884). Rentmeester alleges that he registered his photo with the Copyright Office in 2014, which permits him to bring this suit. 17 U.S.C. § 411(a).

Rentmeester has also plausibly alleged the "copying" component of the second element. He alleges that he provided color transparencies of his photo to Nike's creative director shortly before production of the Nike photo. That allegation establishes that Nike had access to Rentmeester's photo, which in this context means a reasonable opportunity to view it. *L.A. Printex Industries, Inc. v. Aeropostale, Inc.*, 676 F.3d 841, 846 (9th Cir. 2012). Nike's access to Rentmeester's photo, combined with the obvious conceptual similarities between the two photos, is sufficient to create a

---

[1] To avoid the confusion that arises from using the same term to describe two different concepts, some courts now use the term "probative similarity" to describe the similarities relevant to proof of copying. *See, e.g.*, *Peter Letterese & Associates, Inc. v. World Institute of Scientology Enterprises, International*, 533 F.3d 1287, 1301 & n.16 (11th Cir. 2008); *Positive Black Talk Inc. v. Cash Money Records Inc.*, 394 F.3d 357, 368 & n.7 (5th Cir. 2004); *Laureyssens*, 964 F.2d at 140.

presumption that the Nike photo was the product of copying rather than independent creation.

The remaining question is whether Rentmeester has plausibly alleged that Nike copied enough of the protected expression from Rentmeester's photo to establish unlawful appropriation.   To prove this component of his claim, Rentmeester does not have to show that Nike produced an exact duplicate of his photo. *See Rogers v. Koons*, 960 F.2d 301, 307 (2d Cir. 1992).  But, as mentioned, he does have to show that Nike copied enough of the photo's protected expression to render their works "substantially similar." *See Mattel*, 616 F.3d at 913–14.

In our circuit, determining whether works are substantially similar involves a two-part analysis consisting of the "extrinsic test" and the "intrinsic test."  The extrinsic test assesses the objective similarities of the two works, focusing only on the protectable elements of the plaintiff's expression. *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002).  Before that comparison can be made, the court must "filter out" the unprotectable elements of the plaintiff's work—primarily ideas and concepts, material in the public domain, and *scènes à faire* (stock or standard features that are commonly associated with the treatment of a given subject). *Id.* at 822–23.  The protectable elements that remain are then compared to corresponding elements of the defendant's work to assess similarities in the objective details of the works.   The intrinsic test requires a more holistic, subjective comparison of the works to determine whether they are substantially similar in "total concept and feel." *Id.* at 822 (internal quotation marks omitted).   To prevail, a plaintiff must prove substantial similarity under

both tests.  *Funky Films, Inc. v. Time Warner Entertainment Co.*, 462 F.3d 1072, 1077 (9th Cir. 2006).

Only the extrinsic test's application may be decided by the court as a matter of law, *McCulloch v. Albert E. Price, Inc.*, 823 F.2d 316, 319 (9th Cir. 1987), so that is the only test relevant in reviewing the district court's ruling on a motion to dismiss.  Before applying the extrinsic test ourselves, a few words are in order about the filtering process that the test demands.

Certain types of works can be dissected into protected and unprotected elements more readily than others.  With novels, plays, and motion pictures, for instance, even after filtering out unprotectable elements like ideas and *scènes à faire*, many protectable elements of expression remain that can be objectively compared.   "[P]lot, themes, dialogue, mood, setting, pace, characters, and sequence of events" are elements we have previously identified.   *Funky Films*, 462 F.3d at 1077 (internal quotation marks omitted).

Photographs cannot be dissected into protected and unprotected elements in the same way.  To be sure, photos can be broken down into objective elements that reflect the various creative choices the photographer made in composing the image—choices related to subject matter, pose, lighting, camera angle, depth of field, and the like.  *See Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1074–75 (9th Cir. 2000).  But none of those elements is subject to copyright protection when viewed in isolation.  For example, a photographer who produces a photo using a highly original lighting technique or a novel camera angle cannot prevent other photographers from using those same techniques to produce new images of their own, provided the new images are not substantially

similar to the earlier, copyrighted photo.  With respect to a photograph's subject matter, no photographer can claim a monopoly on the right to photograph a particular subject just because he was the first to capture it on film.  A subsequent photographer is free to take her own photo of the same subject, again so long as the resulting image is not substantially similar to the earlier photograph.

That remains true even if, as here, a photographer creates wholly original subject matter by having someone pose in an unusual or distinctive way.  Without question, one of the highly original elements of Rentmeester's photo is the fanciful (non-natural) pose he asked Jordan to assume.  That pose was a product of Rentmeester's own "intellectual invention," *Burrow-Giles*, 111 U.S. at 60; it would not have been captured on film but for Rentmeester's creativity in conceiving it.  The pose Rentmeester conceived is thus quite unlike the pose at issue in *Harney v. Sony Pictures Television, Inc.*, 704 F.3d 173 (1st Cir. 2013), which consisted of nothing more than a daughter riding piggyback on her father's shoulders.  The photographer there did not orchestrate the pose and, even if he had, the pose is so commonplace as to be part of the public domain.  *Id.* at 187; *see also Leibovitz v. Paramount Pictures Corp.*, 137 F.3d 109, 116 (2d Cir. 1998) (pose of a nude, pregnant woman in profile is part of the public domain).

Without gainsaying the originality of the pose Rentmeester created, he cannot copyright the pose itself and thereby prevent others from photographing a person in the same pose.  He is entitled to protection only for the way the pose is expressed in his photograph, a product of not just the pose but also the camera angle, timing, and shutter speed Rentmeester chose.  If a subsequent photographer persuaded

Michael Jordan to assume the exact same pose but took her photo, say, from a bird's eye view directly above him, the resulting image would bear little resemblance to Rentmeester's photo and thus could not be deemed infringing.

What *is* protected by copyright is the photographer's selection and arrangement of the photo's otherwise unprotected elements. If sufficiently original, the combination of subject matter, pose, camera angle, etc., receives protection, not any of the individual elements standing alone. In that respect (although not in others), photographs can be likened to factual compilations. 1 Nimmer on Copyright § 2A.08[E][3][c]; Justin Hughes, *The Photographer's Copyright—Photograph as Art, Photograph as Database*, 25 Harv. J. L. & Tech. 339, 350–51 (2012). An author of a factual compilation cannot claim copyright protection for the underlying factual material—facts are always free for all to use. *Feist*, 499 U.S. at 347–48. If sufficiently original, though, an author's selection and arrangement of the material are entitled to protection. *Id.* at 348–49. The individual elements that comprise a photograph can be viewed in the same way, as the equivalent of unprotectable "facts" that anyone may use to create new works. A second photographer is free to borrow any of the individual elements featured in a copyrighted photograph, "so long as the competing work does not feature the same selection and arrangement" of those elements. *Id.* at 349. In other words, a photographer's copyright is limited to "the

particular selection and arrangement" of the elements as expressed in the copyrighted image. *Id.* at 350–51.[2]

This is not to say, as Nike urges us to hold, that all photographs are entitled to only "thin" copyright protection, as is true of factual compilations. A copyrighted work is entitled to thin protection when the range of creative choices that can be made in producing the work is narrow. *Mattel*, 616 F.3d at 913–14. In *Mattel*, we noted by way of illustration that "there are only so many ways to paint a red bouncy ball on blank canvas." *Id.* at 914. We contrasted that with the "gazillions of ways to make an aliens-attack movie," a work that would be entitled to "broad" protection given the much wider range of creative choices available in producing it. *Id.* at 913–14. When only a narrow range of expression is possible, copyright protection is thin because the copyrighted work will contain few protectable features.

Some photographs are entitled to only thin protection because the range of creative choices available in selecting and arranging the photo's elements is quite limited. That was the case in *Ets-Hokin v. Skyy Spirits, Inc.*, 323 F.3d 763 (9th Cir. 2003), where we held that the plaintiff's commercial product shots of a vodka bottle were entitled to only thin protection. Given the constraints imposed by the subject matter and conventions of commercial product shots, there were relatively few creative choices a photographer could make in producing acceptable images of the bottle. As a result, subtle differences in lighting, camera angle, and

---

[2] We deal here with photographs of recognizable subject matter, rather than more abstract photographic works. We need not decide whether the same principles would apply with equal force to that latter category of works.

background were sufficient to render the defendant's otherwise similar-looking photos of the same bottle non-infringing. *Id.* at 766.

With other photographs, however, the range of creative choices available to the photographer will be far broader, and very few of those choices will be dictated by subject matter or convention. On the spectrum we set out in *Mattel*—the relatively small number of ways "to paint a red bouncy ball on blank canvas" on one end, and the "gazillions of ways to make an aliens-attack movie" on the other—many photos will land more on the "aliens-attack movie" end of the range. 616 F.3d at 913–14. As with any other work, the greater the range of creative choices that may be made, the broader the level of protection that will be afforded to the resulting image. *See id.* at 916; *McCulloch*, 823 F.2d at 321.

Rentmeester's photo is undoubtedly entitled to broad rather than thin protection. The range of creative choices open to Rentmeester in producing his photo was exceptionally broad; very few of those choices were dictated by convention or subject matter. In fact, Rentmeester's photo is distinctive precisely because he chose *not* to be bound by the conventions commonly followed in photographing a basketball player attempting to dunk a basketball. Such photos would typically call for a basketball court as the setting, whether indoors or out. Rentmeester chose instead to place Jordan on an open, grassy knoll with a basketball hoop inserted as a prop, whimsically out of place and seeming to tower well above regulation height. Rentmeester also departed from convention by capturing Jordan in a fanciful, highly original pose, one inspired more by ballet's *grand jeté* than by any pose a basketball player might naturally adopt when dunking a basketball. These creative choices—along

with the other choices Rentmeester made with respect to lighting, camera angle, depth of field, and selection of foreground and background elements—resulted in a photo with many non-standard elements. Rentmeester's selection and arrangement of those elements produced an image entitled to the broadest protection a photograph can receive.

With those preliminary observations out of the way, we can now turn to whether Rentmeester has plausibly alleged that his photo and the Nike photo are substantially similar under the extrinsic test. As discussed, that inquiry requires us to assess similarities in the selection and arrangement of the photos' elements, as reflected in the objective details of the two works. We do not have a well-defined standard for assessing when similarity in selection and arrangement becomes "substantial," and in truth no hard-and-fast rule could be devised to guide determinations that will necessarily turn on the unique facts of each case. *See Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*, 274 F.2d 487, 489 (2d Cir. 1960). The best we can do is borrow from the standard Judge Learned Hand employed in a case involving fabric designs: The two photos' selection and arrangement of elements must be similar enough that "the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them." *Id.*

We conclude that the works at issue here are as a matter of law not substantially similar. Just as Rentmeester made a series of creative choices in the selection and arrangement of the elements in his photograph, so too Nike's photographer made his own distinct choices in that regard. Those choices produced an image that differs from Rentmeester's photo in more than just minor details.

Let's start with the subject matter of the photographs. The two photos are undeniably similar in the subject matter they depict: Both capture Michael Jordan in a leaping pose inspired by ballet's *grand jeté*. But Rentmeester's copyright does not confer a monopoly on that general "idea" or "concept"; he cannot prohibit other photographers from taking their own photos of Jordan in a leaping, *grand jeté*-inspired pose. Because the pose Rentmeester conceived is highly original, though, he is entitled to prevent others from copying the details of that pose as expressed in the photo he took. Had Nike's photographer replicated those details in the Nike photo, a jury might well have been able to find unlawful appropriation even though other elements of the Nike photo, such as background and lighting, differ from the corresponding elements in Rentmeester's photo.

But Nike's photographer did not copy the details of the pose as expressed in Rentmeester's photo; he borrowed only the general idea or concept embodied in the photo. Thus, in each photo Jordan is holding a basketball above his head in his left hand with his legs extended, in a pose at least loosely based on the *grand jeté*. The position of each of his limbs in the two photos is different, however, and those differences in detail are significant because, among other things, they affect the visual impact of the images. In Rentmeester's photo, Jordan's bent limbs combine with the background and foreground elements to convey mainly a sense of horizontal (forward) propulsion, while in the Nike photo Jordan's completely straight limbs combine with the other elements to convey mainly a sense of vertical propulsion. While the photos embody a similar idea or concept, they express it in different ways. *See Folkens v. Wyland Worldwide, LLC*, — F.3d —, 2018 WL 841431, at *4–5 (9th Cir. Feb. 13, 2018).

As to the other highly original element of Rentmeester's photo—the unusual outdoor setting he chose—Nike's photographer did not copy the details of that element either. The two photos again share undeniable similarities at the conceptual level:  Both are taken outdoors without the usual trappings of a basketball court, other than the presence of a lone hoop and backboard.  But when comparing the details of how that concept is expressed in the two photos, stark differences are readily apparent.  Rentmeester set his shot on a grassy knoll with a whimsically out-of-place basketball hoop jutting up from a pole planted in the ground.  The grassy knoll in the foreground of Rentmeester's photo is wholly absent from the Nike photo.  In fact, in the Nike photo there is no foreground element at all.   The positioning of the basketball hoops is also materially different in the two photos.  In Rentmeester's photo, the hoop is positioned at a height that appears beyond the ability of anyone to dunk on (even someone as athletic as Jordan), which further contributes to the whimsical rather than realistic nature of the depiction.  The hoop in the Nike photo, by contrast, appears to be easily within Jordan's reach.

The other major conceptual similarity shared by the two photos is that both are taken from a similar angle so that the viewer looks up at Jordan's soaring figure silhouetted against a clear sky.    This is a far less original element of Rentmeester's photo, as photographers have long used similar camera angles to capture subjects silhouetted against the sky. But even here, the two photos differ as to expressive details in material respects.  In Rentmeester's photo, the background is a cloudless blue sky; in the Nike photo, it is the Chicago skyline silhouetted against the orange and purple hues of late dusk or early dawn.  In Rentmeester's photo, the sun looms large in the lower right-hand corner of the image; in the Nike

photo the sun does not appear at all. And in Rentmeester's photo, parts of Jordan's figure are cast in shadow, while in the Nike photo every inch of Jordan's figure is brightly lit.

Finally, the arrangement of the elements within the photographs is materially different in two further respects. In Rentmeester's photo, Jordan is positioned slightly left of center and appears as a relatively small figure within the frame. In the Nike photo, he is perfectly centered and dominates the frame. In Rentmeester's photo, the basketball hoop stands atop a tall pole planted in the ground, and the hoop's position within the frame balances Jordan's left-of-center placement. In the Nike photo, the hoop takes up the entire right border of the frame, highlighting Jordan's dominant, central position. The hoops are also lit and angled differently toward the viewer, further distinguishing their expressive roles in the photographs.

In our view, these differences in selection and arrangement of elements, as reflected in the photos' objective details, preclude as a matter of law a finding of infringement. Nike's photographer made choices regarding selection and arrangement that produced an image unmistakably different from Rentmeester's photo in material details—disparities that no ordinary observer of the two works would be disposed to overlook. What Rentmeester's photo and the Nike photo share are similarities in general ideas or concepts: Michael Jordan attempting to dunk in a pose inspired by ballet's *grand jeté*; an outdoor setting stripped of most of the traditional trappings of basketball; a camera angle that captures the subject silhouetted against the sky. Rentmeester cannot claim an exclusive right to ideas or concepts at that level of generality, even in combination. Permitting him to claim such a right would withdraw those ideas or concepts from the

"stock of materials" available to other artists, 4 Nimmer on Copyright § 13.03[B][2][a], thereby thwarting copyright's "fundamental objective" of "foster[ing] creativity." *Warner Bros. Inc. v. American Broadcasting Cos.*, 720 F.2d 231, 240 (2d Cir. 1983). Copyright promotes the progress of science and the useful arts by "encourag[ing] others to build freely upon the ideas and information conveyed by a work." *Feist*, 499 U.S. at 349–50. That is all Nike's photographer did here.

If the Nike photo cannot as a matter of law be found substantially similar to Rentmeester's photo, the same conclusion follows ineluctably with respect to the Jumpman logo. The logo is merely a solid black silhouette of Jordan's figure as it appears in the Nike photo, which, as we have said, differs materially from the way Jordan's figure appears in Rentmeester's photo. Isolating that one element from the Nike photo and rendering it in a stylized fashion make the Jumpman logo even less similar to Rentmeester's photo than the Nike photo itself.[3]

### III

Rentmeester makes three additional arguments in support of reversal, none of which we find persuasive.

---

[3] The district court concluded that, because infringement cannot be shown as a matter of law, Rentmeester's claim under the Digital Millennium Copyright Act fails as well. Rentmeester does not challenge that conclusion on appeal, other than to argue that the district court erred in holding that Nike's works are non-infringing.

A

First, Rentmeester contends that dismissal at the pleading stage is rarely appropriate in copyright infringement cases and that he should have been allowed to take discovery before the district court assessed substantial similarity. It is true that dismissal of copyright infringement claims occurs more commonly at the summary judgment stage, but dismissal at the pleading stage is by no means unprecedented. *See, e.g.*, *Peters v. West*, 692 F.3d 629, 631 (7th Cir. 2012); *Peter F. Gaito Architecture, LLC v. Simone Development Corp.*, 602 F.3d 57, 64–65 (2d Cir. 2010); *Christianson v. West Publishing Co.*, 149 F.2d 202, 203 (9th Cir. 1945). Dismissal is appropriate here because the two photos and the Jumpman logo are properly before us and thus "capable of examination and comparison." *Christianson*, 149 F.2d at 203. Nothing disclosed during discovery could alter the fact that the allegedly infringing works are as a matter of law not substantially similar to Rentmeester's photo.

This is not a case in which discovery could shed light on any issues that actually matter to the outcome. In some cases, the defendant claims independent creation as a defense and thus denies having had access to the plaintiff's work. In that scenario, disputed factual issues will often require discovery to flesh out. Here, Nike does not contest that it had access to Rentmeester's photo, so that issue is not in dispute.

In other cases, more may need to be known about the range of creative choices available to the plaintiff photographer in order to determine the breadth of protection available to his work. Here, we have accepted as true all of Rentmeester's allegations concerning the creative choices he made in producing his photograph. But even granting his

photo the broad protection it deserves, a comparison of the works at issue makes clear that Nike's photographer made creative choices of his own, which resulted in an image and derivative logo not substantially similar to Rentmeester's photo. Nothing disclosed during discovery could strengthen Rentmeester's arguments on this score.

B

Second, Rentmeester asserts that because he has made a strong showing of access, he need make only a lesser showing of substantial similarity. For this proposition he relies on the so-called "inverse ratio rule." Under the inverse ratio rule, we require "a lower standard of proof of substantial similarity when a high degree of access is shown." *Three Boys Music*, 212 F.3d at 485 (internal quotation marks omitted). That rule does not help Rentmeester because it assists only in proving copying, not in proving unlawful appropriation, the only element at issue in this case. *See* Jane C. Ginsburg & Robert A. Gorman, Copyright Law 133–34 (2012); 4 Nimmer on Copyright § 13.03[C], [D]; 3 William F. Patry, Patry on Copyright § 9:91 (2017).

Recall from our earlier discussion that a plaintiff who lacks direct evidence of copying can attempt to prove that fact circumstantially by showing that the defendant had access to the plaintiff's work and that the two works share similarities probative of copying. *See Baxter*, 812 F.2d at 423; 4 Nimmer on Copyright § 13.01[B]. The inverse ratio rule provides that the stronger the evidence of access, the less compelling the similarities between the two works need be in order to give rise to an inference of copying. On the flip side, the more compelling the similarities supporting an inference of copying, the less compelling the evidence of access need be.

Indeed, if the similarities are "striking" enough—that is, highly unlikely to have been the product of independent creation—such similarities can be sufficient on their own to establish that the defendant must have had access to the plaintiff's work. *See Ty, Inc. v. GMA Accessories, Inc.*, 132 F.3d 1167, 1170 (7th Cir. 1997); *Baxter*, 812 F.2d at 423–24 & n.2. That was the case in *Feist*, for example, where the plaintiff planted fictitious entries in its white pages directory precisely to detect copying and those same fictitious entries appeared in the defendant's competing directory. 499 U.S. at 344.

But again, after proving that the defendant's work is the product of copying rather than independent creation, the plaintiff must still show copying of protected expression that amounts to unlawful appropriation. *Peters*, 692 F.3d at 635. The showing of substantial similarity necessary to prove unlawful appropriation does not vary with the degree of access the plaintiff has shown. *Id.*; *Positive Black Talk Inc. v. Cash Money Records Inc.*, 394 F.3d 357, 372 n.11 (5th Cir. 2004); 3 Patry on Copyright § 9:91. The substantial similarity standard represents copyright law's attempt "to strike a delicate balance between the protection to which authors are entitled under an act of Congress and the freedom that exists for all others to create their works outside the area protected against infringement." *Warner Bros.*, 720 F.2d at 245. That balance does not shift depending on how strong the plaintiff's proof of access may be.

The inverse ratio rule thus assists Rentmeester on the issue of copying, but that component of his claim is not contested in this appeal. The only issue relevant here is whether Nike engaged in unlawful appropriation by copying more of Rentmeester's protected expression than copyright

law allows.  The inverse ratio rule has no bearing on that determination.

C

Finally, Rentmeester contends that the district court should have granted him leave to amend his complaint, rather than dismissing the action with prejudice.  The district court did not abuse its discretion in dismissing Rentmeester's suit with prejudice because amending the complaint would have been futile.  Rentmeester's photo and the allegedly infringing works are as a matter of law not substantially similar.  None of the new allegations Rentmeester proposed to add would have changed that dispositive fact.

**AFFIRMED.**

**Appendix**



Rentmeester's photograph



Nike's photograph



Nike's Jumpman logo

OWENS, Circuit Judge, concurring in part and dissenting in part:

I agree with most of the majority's analysis, and with its holding that Rentmeester cannot prevail on his Jumpman logo copyright infringement claim. However, I respectfully disagree with the majority's conclusion as to the Nike photo.

After correctly (1) setting out the law of copyright as applied to photographs, and (2) recognizing that Rentmeester's photo is entitled to "broad" copyright protection, the majority then dissects why, in its view, the Rentmeester and Nike photos are, as a matter of law, not substantially similar. This section of the majority reads like a compelling motion for summary judgment or closing argument to a jury, and it may be correct at the end of the day. Yet such questions of substantial similarity are inherently factual, and should not have been made at this stage of the game.

Where no discovery has taken place, we should not say that, as a matter of law, the Nike photo could never be substantially similar to the Rentmeester photo. This is an inherently factual question which is often reserved for the jury, and rarely for a court to decide at the motion to dismiss stage. *See, e.g.*, *L.A. Printex Indus., Inc. v. Aeropostale, Inc.*, 676 F.3d 841, 848 (9th Cir. 2012) ("Summary judgment is 'not highly favored' on questions of substantial similarity in copyright cases." (citation omitted)); *Sturdza v. United Arab Emirates*, 281 F.3d 1287, 1296 (D.C. Cir. 2002) ("Because substantial similarity is customarily an extremely close question of fact, summary judgment has traditionally been frowned upon in copyright litigation." (citation and alteration omitted)); *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1213

(11th Cir. 2000) ("Copyright infringement is generally a question of fact for the jury to decide . . . and the court erred in holding as a matter of law that no reasonable jury could find that the Warner Brothers promotional single-frame images were substantially similar to the aspects of [the photographer's] work protected by copyright.").

"Although it may be easy to identify differences between" the two photos, the Nike photo also has "much in common" with the broadly protected Rentmeester photo. *Leigh*, 212 F.3d at 1216 (reversing summary judgment for defendant with respect to its alleged infringement of a photograph notwithstanding "undeniably[] significant differences between the pictures"). For example, in addition to the similarity of both photos capturing Michael Jordan doing a grand-jeté pose while holding a basketball, both photos are taken from a similar angle, have a silhouette aspect of Jordan against a contrasting solid background, and contain an outdoor setting with no indication of basketball apart from an isolated hoop and backboard.

I cannot say that no reasonable jury could find in favor of Rentmeester regarding the Nike photo, so I would hesitate in granting summary judgment. Here, the majority did not permit the case even to go that far. Rather, it substituted its own judgment – with no factual record development by the parties – as to why the photos are not substantially similar.

While I disagree with the majority's ruling as to the Nike photo, I agree with its holding as to the Jumpman logo. The only element of the Rentmeester photo which Nike possibly could have copied to create the Jumpman logo is the outline of Jordan doing a grand-jeté pose while holding a basketball. As the cases that the majority cites make clear, the outline of

a pose isolated from a photograph enjoys, at best, "thin" copyright protection. A grand-jeté dunking pose cannot receive the broad protection that Rentmeester claims, even if Rentmeester encouraged Jordan to strike it. The pose is ultimately no different from the Vulcan salute of Spock, the double thumbs up of Arthur Fonzarelli, or John Travolta's iconic Saturday Night Fever dance pose. *See, e.g.*, *Harney v. Sony Pictures Television, Inc.*, 704 F.3d 173, 187 (1st Cir. 2013) (holding that piggyback pose in photograph was unprotected element); *Mattel, Inc. v. Azrak-Hamway Int'l, Inc.*, 724 F.2d 357, 360 (2d Cir. 1983) (per curiam) (holding that figurine's "traditional fighting pose" was unprotected element); *Reece v. Island Treasures Art Gallery, Inc.*, 468 F. Supp. 2d 1197, 1206–07 (D. Haw. 2006) (holding that hula pose in photograph was unprotected element); *cf. Bikram's Yoga College of India, L.P. v. Evolation Yoga, LLC*, 803 F.3d 1032, 1036–44 (9th Cir. 2015) (holding that yoga sequence fell outside of copyright protection).

All of these poses can exist independently of the photographer taking them. It does not matter that Rentmeester told Jordan to pose that way – standing alone, a photograph of a mannequin or marionette in that same pose would receive the same thin protection. *Cf. Folkens v. Wyland Worldwide, LLC*, – F.3d –, 2018 WL 841431, at *3–4 (9th Cir. Feb. 13, 2018) (holding that two dolphins crossing each other was an unprotected element because that pose can be found in nature and it was irrelevant that the dolphins were posed by animal trainers). Indeed, Rentmeester cannot cite any cases to suggest that Jordan's pose, in isolation, enjoys anything more than the thinnest of copyright protection. To hold otherwise would mean that a photographer would own a broad copyright over photos of human movements, including facial expressions. I cannot find any authority in

our cases or the relevant copyright statutes that would permit such a radical change in our intellectual property laws. *Cf. id.* at \*4 (reaffirming that "ideas, 'first expressed in nature, are the common heritage of humankind, and no artist may use copyright law to prevent others from depicting them'" (quoting *Satava v. Lowry*, 323 F.3d 805, 813 (9th Cir. 2003)).

At this stage of the litigation, we assume that (1) Nike traced the Jumpman logo directly from the Nike photo, and (2) that Nike based its photo on the Rentmeester photo. Even assuming all of this to be true, the Jumpman logo is not "virtually identical" to the image of Jordan in the Rentmeester photo. *Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904, 914 (9th Cir. 2010). For example, there are differences in the angles of Jordan's arms and legs, and the Jumpman logo is a black silhouette. And without being virtually identical, the Jumpman logo – the outline of a pose by Jordan in the Nike photo – cannot infringe upon any thin copyright protection enjoyed by the few elements of the Rentmeester photo allegedly copied. *See id*.

Accordingly, while I agree with the majority regarding the Jumpman logo, I think that whether the Nike photo is substantially similar is not an uncontested breakaway layup, and therefore dismissal of that copyright infringement claim is premature.[1]

---

[1] Because I would reverse the district court's dismissal of Rentmeester's copyright infringement claim with respect to the Nike photo, I would also reverse the dismissal of his Digital Millennium Copyright Act claim as to the Nike photo.