NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

AUG 3 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| CARLA JO MASTERSON, | No. 19-55650 |
| Plaintiff-Appellant, | D.C. No. 2:18-cv-05966-MWF-PLA |
| v. | |
| THE WALT DISNEY COMPANY; DISNEY ENTERPRISES, INC.; DISNEY CONSUMER PRODUCTS AND INTERACTIVE MEDIA, INC.; DISNEY INTERACTIVE STUDIOS, INC.; DISNEY SHOPPING, INC.; PIXAR; PETE DOCTER; MICHAEL ARNDT; RONNIE DEL CARMEN; MEG LEFAUVE; JOSH COOLEY, | MEMORANDUM* |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the Central District of California
Michael W. Fitzgerald, District Judge, Presiding

Submitted June 5, 2020**
Pasadena, California

Before: LEE and BUMATAY, Circuit Judges, and MOLLOY,*** District Judge.

---

* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

** The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

Carla Masterson appeals from the district court's dismissal of her copyright infringement claims against The Walt Disney Co. Masterson alleged that Disney's *Inside Out* (the "Movie") violated her copyrights in her book of poetry, *What's On the Other Side of the Rainbow? (A Book of Feelings)* (the "Book"), and her movie script, *The Secret of the Golden Mirror* (the "Script"). We have jurisdiction under 28 U.S.C. § 1291, and we review *de novo* a dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). We affirm.

1.  Works at Issue: Masterson's Book is a collection of poems about different feelings that is about forty pages long. It begins with a cloud-like character named Mr. Positively who introduces himself to four unnamed children. Mr. Positively then introduces these four children to various anthropomorphic doors that are associated with different feelings. The only character to have dialogue in the Book is Mr. Positively; the doors and the children remain silent throughout the story. Masterson's Script somewhat differs from her Book. It tells the story of how Mr. Positively and the feeling doors help a child cope with his struggles being in an unhappy family situation. For example, early in the Script, the child listens to his drunken father beat his mother.

In contrast, Disney's Movie tells the story of Riley, an eleven-year-old girl,

---

*** The Honorable Donald W. Molloy, United States District Judge for the District of Montana, sitting by designation.

and the anthropomorphized emotions that live inside her: Joy, Sadness, Fear, Disgust, and Anger. The main storyline follows the journey of Joy and Sadness making it back to Riley's "Headquarters" (which manages her emotions) during which Joy learns the usefulness of Sadness and the importance of having all the emotions contribute to Riley's life.

2.      Addressing Substantial Similarity in a Motion to Dismiss: The district court did not err by considering substantial similarity in a motion to dismiss even though the works at issue are literary works.

Masterson correctly points out that we have not issued a published decision affirming the dismissal of a case alleging infringement of a literary work on substantial similarity grounds before discovery has been conducted. But we have affirmed such dismissals repeatedly over the past decade in unpublished memorandum dispositions.[1] Moreover, other circuits have affirmed Rule 12(b)(6)

---

[1] *See, e.g., Fillmore v. Blumhouse Prods., LLC*, 771 F. App'x 756, 756–57 (9th Cir. 2019) (manuscript and film); *Esplanade Prods., Inc. v. Walt Disney Co.*, 768 F. App'x 732, 733 (9th Cir. 2019) (film treatment and movie); *Abdullah v. Walt Disney Co.*, 714 F. App'x 758, 759 (9th Cir. 2018) (book and movie); *Silas v. HBO, Inc.*, 713 F. App'x 626, 627 (9th Cir. 2018) (television series and screenplay); *Shame on You Prods., Inc v. Banks*, 690 F. App'x 519, 520 (9th Cir. 2017) (screenplay and film); *Heusey v. Emmerich*, 692 F. App'x 928, 929 (9th Cir. 2017) (screenplay and film); *Schkeiban v. Cameron*, 566 F. App'x 616, 617 (9th Cir. 2014) (novel/screenplay and film); *White v. Twentieth Century Fox Corp.*, 572 F. App'x 475, 476–77 (9th Cir. 2014) (screenplay and films/television shows); *Wild v. NBC Universal*, 513 F. App'x 640, 641 (9th Cir. 2013) (graphic novel and television

3

dismissals on the basis of no substantial similarity when dealing with literary works. *See, e.g.*, *Tanksley v. Daniels*, 902 F.3d 165, 177 (3d Cir. 2018) (in a case involving a television pilot and a network television series, explaining that "[w]ithout substantial similarity, Tanksley's complaint fails to state a claim of copyright infringement and was properly dismissed under Rule 12(b)(6)"); *Peters v. West*, 692 F.3d 629, 635–36 (7th Cir. 2012) (finding song lyrics were not substantially similar on a motion to dismiss); *Nelson v. PRN Prods., Inc.*, 873 F.2d 1141, 1143–44 (8th Cir. 1989) (same).

Despite Masterson's arguments, determining substantial similarity does not necessarily require expert testimony. We explained in *Rentmeester v. Nike, Inc.* that a motion to dismiss is proper when "[n]othing disclosed during discovery could alter the fact that the allegedly infringing works are as a matter of law not substantially similar." 883 F.3d 1111, 1123 (9th Cir. 2018), *overruled on other grounds by Skidmore v. Zeppelin*, 952 F.3d 1051 (9th Cir. 2020). Indeed, this court has even found at the summary judgment stage that it is not an abuse of discretion to reject expert testimony when the court "engage[s] in an extensive analysis of the alleged similarities in expressive elements." *Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1180 (9th Cir. 2003), *overruled on other grounds by Skidmore*, 952 F.3d 1051.

---

show); *Thomas v. Walt Disney Co.*, 337 F. App'x 694, 695 (9th Cir. 2009) (literary work and movie).

Whether a district court erred in considering substantial similarity in a motion to dismiss without expert testimony depends on the applicable standards for the procedural posture of the case. It is not that expert testimony is never required or that substantial similarity can always be determined as a matter of law on a motion to dismiss. Rather, the court is required to determine whether the complaint states a plausible claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. Thus, there will be times when the court finds it plausible that two works are substantially similar and that expert testimony could be helpful. But there will also be times where the court's "judicial experience and common sense" shows that the claims are not plausible and that a comparison of two works creates no more than a "mere possibility of misconduct." *Id*. In this regard, literary works do not receive special treatment.

3. <u>The Book and the Movie Are Not Substantially Similar</u>: With the above in mind, Masterson fails to plausibly allege that the Book and the Movie are substantially similar.

We follow a two-part analysis in assessing substantial similarity; it consists of an "extrinsic test" and an "intrinsic test." *Rentmeester*, 883 F.3d at 1118. The extrinsic test involves "assess[ing] the objective similarities of the two works, focusing only on the protectable elements of the plaintiff's expression." *Id*. In the

5

extrinsic test, the court first filters out unprotectable elements, which are "primarily ideas and concepts, material in the public domain, and *scènes à faire* (stock or standard features that are commonly associated with the treatment of a given subject)." *Id*. The remaining protectable elements are then compared "to assess similarities in the *objective details* of the works." *Id*. (emphasis added). For literary works, "[t]he extrinsic test focuses on articulable similarities between the plot, themes, dialogue, mood, setting, pace, characters, and sequence of events in the two works." *Funky Films, Inc. v. Time Warner Entm't Co.*, 462 F.3d 1072, 1077 (9th Cir. 2006), *overruled on other grounds by Skidmore*, 952 F.3d 1051 (internal quotation marks omitted). The intrinsic test, on the other hand, "requires a more holistic, subjective comparison of the works to determine whether they are substantially similar in 'total concept and feel.'" *Rentmeester*, 883 F.3d at 1118. "Only the extrinsic test's application may be decided by the court as a matter of law, so that is the only test relevant in reviewing the district court's ruling on a motion to dismiss." *Id*. (citation omitted).

Applying the above principles here shows that it is not plausible that the Book and the Movie have any substantial similarity under the extrinsic test. All of the asserted similarities must be filtered out. Though the works share a general theme— *i.e.*, every feeling has a reason—such a theme is too general to be protectible for the purposes of the extrinsic test. The fact that the Book and the Movie involve a journey

6

through childhood emotions is also too general to be a cognizable similarity. Other supposed similarities fade away upon scrutiny. For example, the "golden mirror" in the Book, which is associated with the Book's "Golden Rule" that commands the reader "to love myself and others the way I would want to be loved," has no similarity with the Movie's golden orbs, which are literal representations of memories.

The alleged similarities between the characters are also unprotectable. That both works have a cloud-like character that talks is too general of a similarity to be an "objective detail" under the extrinsic test. And the presence of anthropomorphized emotion characters flows from the premise of doing a children's story about human emotions, making it unprotectable scenes-a-faire.

Finally, the combination of these unprotectable elements fails to show any cognizable similarity. As this court recently explained in *Skidmore*, for a combination of unprotectable elements to sustain a claim of substantial similarity, an author must have created a new arrangement of unprotectable elements and the allegedly infringing work must share substantial amounts of that same combination. 952 F.3d at 1075. Here, there are few, if any, similarities between the works. At best, the similarities are that (1) both have the general theme of exploring emotions in childhood, (2) both include anthropomorphized characters embodying the emotions joy, sadness, fear, and anger, (3) both have a crying character whose tears

fall on flowers, (4) both have a cloud-like character, and (5) both associate friendship with the color purple and arch shapes. Such a combination is not numerous or novel enough to warrant copyright protection—they do not show a "*particular* way in which the artistic elements form a coherent pattern, synthesis, or design." *Id*. at 1074 (emphasis in original). Rather, the similarities between the Movie and the Book are more like "random similarities scattered throughout the works," of which this court has been "particularly cautious." *Litchfield v. Spielberg*, 736 F.2d 1352, 1356 (9th Cir. 1984). Thus, Masterson failed to plausibly allege substantial similarity.

4.     Access to the Script: Masterson failed to address the district court's determination that, "[t]o the extent Plaintiff relies on her movie script for her claim of copyright infringement, she fails to adequately allege access." Thus, any such argument is waived. *See Brownfield v. City of Yakima*, 612 F.3d 1140, 1149 n.4 (9th Cir. 2010) ("We review only issues which are argued specifically and distinctly in a party's opening brief. We will not manufacture arguments for an appellant, and a bare assertion does not preserve a claim . . . ." (quoting *Greenwood v. FAA*, 28 F.3d 971, 977 (9th Cir. 1994)).

**AFFIRMED**